FILED
2007 Jan-16  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JULIA HUFF WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CITY OF HUNTSVILLE,** | ) | |
| **ALABAMA; COMPTON OWENS,** | ) | |
| **individually and in his official** | ) | |
| **capacity as Chief of Police for the** | ) | **Civil Action No. CV-04-S-2636-NE** |
| **City of Huntsville; RHONDA** | ) | |
| **ROSSER, individually and in her** | ) | |
| **official capacity as Police Officer for** | ) | |
| **the City of Huntsville; and** | ) | |
| **JENNIFER WATKINS, individually** | ) | |
| **and in her official capacity as Police** | ) | |
| **Officer for the City of Huntsville;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This is a civil rights action arising out of the arrest and confinement of plaintiff, Julia Huff Walker, in the Huntsville City Jail for a period of approximately twenty-four hours during July 2002.[1]  The amended complaint names as defendants the City of Huntsville, Alabama, its Chief of Police, and two individual police officers.[2]  The claim is that plaintiff was suffering from a brain aneurysm at the time of her arrest

---

[1] Doc. no. 19 (Amended Complaint).

[2] *Id.*

and detention, and that defendants' failure to identify that condition, and, drop charges against her for driving under the influence of a controlled substance, gives rise to causes of action for violations of various provisions of the United States Constitution, as well as state law claims of negligence, false arrest, outrage, invasion of privacy, assault and battery, and malicious prosecution.[3]

Currently before the court are three separate, but interrelated motions: (1) plaintiff's motion for reconsideration of this court's order denying additional time to respond to defendants' motions for summary judgment, and for permission to reopen discovery, or, in the alternative, for summary denial of defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(f);[4] (2) plaintiff's motion to identify experts out of time;[5] and (3) defendants' motion to strike certain expert affidavits offered by plaintiff in opposition to defendants' motions for summary judgment.[6]

## PART ONE

### *Background*

Deciding the motions currently before the court does not require intense legal

---

[3] *Id.*

[4] Doc. no. 54 (Motion to Reconsider).

[5] Doc. no. 55 (Motion to Identify Experts Out of Time).

[6] Doc. no. 52 (Motion to Strike and Motion *in Limine*).

analysis; there is no perplexing aspect of binding precedent that necessitates jurisprudential hair-splitting; no question of first impression that justifies summoning the preeminent scholars of our time.  There are, however, enough twists and turns in the factual and procedural background to leave William Shakespeare tongue-tied. With that caveat, the court does its best in the following discussion to convey the pertinent details in a clear and understandable fashion.

**A.    The Scheduling Framework**

A Scheduling Order was entered in this action on October 5, 2004.[7]  That order specified the following significant deadlines, listed chronologically:

- Plaintiff's disclosure of expert witnesses:    April 15, 2005;

- Defendant's disclosure of expert witnesses:  May 27, 2005;

- Discovery cutoff:                                          August 1, 2005;

- Dispositive motions:                                    September 1, 2005;

- Witness and exhibit lists:                             October 7, 2005;

- Trial ready:                                                 November, 2005.[8]

Plaintiff filed a one-page "Consented to Motion for Amendment to Court's Scheduling Order" on July 28, 2005.[9]  Notably, at the time of filing, the deadlines for

---

[7] Doc. no. 15 (Scheduling Order).

[8] *Id*. at pp. 1-2.

[9] Doc. no. 23 (Motion to Amend Scheduling Order).

designation and disclosure of expert witnesses by both sides had passed.[10]  Moreover, the motion itself was somewhat ambiguous as to the particular extensions sought.  In the opening sentence, plaintiff requested that the court "extend the discovery cutoff, the dispositive motion deadline, expert testimony deadline and anticipated trial date."[11]  In the body of the motion, however, plaintiff appeared to narrow her request, stating that "[t]he parties request that the discovery deadline in this matter be extended to October 5, 2005, *and that other deadlines and trial be extended accordingly*."[12]

Several days after receipt of this motion, the court entered an order granting the requests, but only in part.  That is, the court extended the discovery deadline to October 5, 2005; extended the dispositive motion deadline to November 4, 2005; extended the deadline for the filing of trial witnesses and exhibit lists to December 7, 2005; and reset the trial-ready date to January, 2006.[13]  No mention was made in the order regarding the deadline for expert disclosures.  By implication, then, no extension of that deadline was granted.  Since the expert disclosure deadline had already passed (indeed, *long-since passed*) at the time of the motion, and since there

---

[10] Doc. no. 15, p. 2.

[11] Doc. no. 23.

[12] *Id*. at ¶ 2 (emphasis supplied).

[13] Order Dated August 2, 2005.

was not a single reason presented in the motion for extension of that deadline, the court easily concluded that the requisite "good cause" had not been shown. *See* Fed. R. Civ. P. 16(b) ("A schedule [set by a Scheduling Order] shall not be modified except upon a showing of good cause. . . ."); *Sosa v. Airprint Systems*, *Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (noting that Rule 16(b)'s good cause standard "precludes modification [of the scheduling order's filing deadlines] unless the schedule cannot 'be met despite the diligence of the party seeking the extension'") (quoting Fed. R. Civ. P. 16 advisory committee's note).

## B.    Last-Minute Discoveries

Following entry of that order, the parties began preparing for the impending discovery cutoff of October 5, 2005.  Apparently, plaintiff had significantly more ground to cover in this area than defendants:  on September 29, 2005 — less than one week prior to the cutoff — counsel for plaintiff noticed the depositions of *all four defendants*, and served with those notices several requests for production.[14] According to counsel for defendants, "[t]his was the first formal discovery initiated by Walker at any point in the history of the case."[15]  After service of these notices and

---

[14] Doc. no. 34 (Defendants' Response to Plaintiff's Motion for Additional Time and to Reopen Discovery), Ex. D (Owens Deposition Notice); *id*. at Ex. E (Watkins Deposition Notice); *id*. at Ex. F (Rosser Deposition Notice); *id*. at Ex. G (City of Huntsville Deposition Notice).

[15] Doc. no. 34, p. 7.

requests, the attorneys for both sides conferred, and defense counsel agreed to produce documents responsive to the requests for production (to the extent practicable given the fast-approaching discovery cutoff) at or before the depositions.[16] This is where things get complicated.  According to defense counsel:

> During the course of searching for an extant copy of the Huntsville City Jail policy manual in effect at the time of Walker's confinement on July 28-29, 2002, other documents responsive to Walker's requests for production were found.  Specifically, these documents consisted of handwritten jail logs generated by personnel during Walker's twenty-four hour confinement there.  These documents were found by [City of Huntsville] personnel in a storage room at the Huntsville Police Department at 815 Wheeler Avenue while looking for the jail policy manual, and were found completely by accident.  Neither I [attorney C. Gregory Burgess], nor any of defendants to my knowledge, were aware of the existence of these handwritten jail logs.  To the contrary, it was my understanding that my office had already been provided with all jail records pertinent to Walker's confinement, and that to the extent there were any other jail records that may have once existed, such documents were either lost or destroyed when Madison County took over operational control of the Huntsville City Jail in or about February 2003.[17]

These documents evidently enabled defendants "for the first time to derive the names of *all* jail personnel who were on duty during the twenty-four hour period of Walker's confinement."[18]  Because knowing exactly what transpired at the jail during

---

[16] *Id*. at Ex. I (Affidavit of C. Gregory Burgess), ¶ 5.  The court notes that the parties agreed to hold the depositions on dates falling *after* the close of formal discovery, but before the dispositive motion deadline.  *See id*.

[17] *Id*. at ¶ 6.

[18] *Id*. (emphasis in original).

plaintiff's confinement is critical to this lawsuit, this information would obviously be of interest to plaintiff's attorneys.  Recognizing this, defense counsel received the documents on Friday, October 7, 2005, and "produced them to Walker three days later on Monday, October 10, 2005, which was the day Walker was scheduled to depose Chief Owens."[19]  At this point, the discovery cutoff had passed, so plaintiff had no opportunity to pursue these potential witnesses.  Plaintiff's attorney, did, however, "[take] time to review these documents before beginning to depose Chief Owens . . . , and asked Chief Owens about many of the jail personnel listed in the handwritten jail logs."[20]

Although plaintiff was from that moment forward aware (actually or constructively) of the existence of these potential witnesses, at some point thereafter defense counsel determined that it would be prudent to serve plaintiff with a supplemental initial disclosure that listed them by name.[21]  *Cf.* Fed. R. Civ. P. 26(e)(1) ("A party is under a duty to supplement . . . its [initial] disclosures . . . [only] if the additional or corrective information has not otherwise been made known to the other parties during the discovery process.").  Therefore, on October 28, 2005 — seven days prior to the dispositive motion deadline — defendants formally supplemented

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

their initial disclosures so as to identify twenty-seven previously unknown jail staffers.[22]  As stated, with one possible exception, plaintiff should have been aware of these individuals following her receipt of the recently discovered documents, because their names were listed therein.  The exception is Pat Powers, probably (although apparently not certainly) a nurse who saw plaintiff during her confinement at the City Jail.[23]  According to defense counsel,

> while her name was not specifically mentioned, there was a reference in the jail logs to a "nurse" having seen Walker during her confinement. Upon seeing this reference and inquiring as to who this "nurse" might have been, it was learned by [defense attorneys] that Pat Powers might have been this nurse as she was an independent contractor providing nursing services to the Huntsville City Jail at the time of Walker's confinement.[24]

Knowledge of the identity of a nurse who actually had seen plaintiff during her confinement would be significant, of course, since the principal question in this case is whether defendants were, or should have been, aware that plaintiff was suffering from a brain aneurysm.  Indeed, "[u]ntil defendants discovered the handwritten jail logs, defendants did not know for certain that Walker had been seen by a nurse while

---

[22] *Id.*  Plaintiff apparently did not *receive* this supplemental disclosure until October 31, 2005. *See* doc. no. 33 (Affidavit of Linda L. Cole), ¶ 2.

[23] Doc. no. 34, Ex. I, ¶ 7.

[24] *Id.*

in jail."[25]  Still, for reasons that are not clear, plaintiff's attorneys apparently failed to ask any questions about this nurse upon receipt of the documents.  The court presumes that, in light of the time pressures, counsel for plaintiff simply overlooked the mention of the nurse.

In any event, the supplemental disclosure was not limited to the individuals named or referenced in the jail logs.  Defendants also identified twelve other persons who had not been disclosed earlier, but of whom defendant contends plaintiff should have been aware.[26]  That is, six of the individuals whose names were disclosed by defendant for the first time in the supplemental initial disclosure were, in fact, disclosed by *plaintiff* in *her* initial disclosure.[27]  The seventh person is actually plaintiff's daughter-in-law,[28] while persons eight through eleven were plaintiff's treating physicians during her post-detention hospital stay.[29]  The twelfth new name from this category, while not explicitly enumerated within defendants' initial disclosure, appeared on a document that accompanied that disclosure.[30]

To summarize:  of the thirty-nine total witnesses that were listed by defendants

---

[25] Doc. no. 34, p. 9 n.4.  Defendants report that they have not contacted Pat Powers to confirm that she was the nurse on duty at the time in issue.  *Id.* at Ex. I, ¶ 7.

[26] *Id.*

[27] *See* doc. no. 34, p. 4; *id.* at Ex. C (Plaintiff's Initial Disclosure).

[28] Doc. no. 34, p. 4.

[29] *Id.* at p. 5.

[30] *Id.* at pp. 5-6.

for the first time in their supplemental initial disclosure, all were either related to plaintiff; listed by plaintiff in *her* initial disclosure; listed in the documents that accompanied defendants' initial disclosure; to be found within the jail logs that defendants proffered to plaintiff following her belated requests for production; or, described by title, if not by name, in the jail logs.  At the same time, though, *none* of the twenty-seven jail staffers on duty during plaintiff's incarceration (including the nurse who evaluated her) were revealed to her attorneys until *after* the official close of discovery.

## C.   The Fallout

The dispositive motion deadline — November 4, 2005 — fell nearly thirty days after plaintiff received the newly discovered jail logs, but only four days after she came into possession of defendants' supplemental initial disclosure that explicitly named Pat Powers.[31]  On that date, each of the four defendants filed a motion for summary judgment.[32]  It is significant to note that none of the previously undisclosed witnesses identified in defendants' supplemental initial disclosure were relied upon in support of defendants' summary judgment motions.  Nonetheless, exactly two

---

[31] *See* Order Dated August 2, 2005.

[32] Doc. no. 26 (City of Huntsville's Motion for Summary Judgment); doc. no. 27 (Chief Owens's Motion for Summary Judgment); doc. no. 28 (Officer Rosser's Motion for Summary Judgment); doc. no. 29 (Officer Watkins's Motion for Summary Judgment).

weeks after those motions were submitted, plaintiff filed a "Motion for Additional Time to Respond to Defendants' Motion[s] for Summary Judgment, and Motion to Reopen Discovery."[33]  As grounds therefor, plaintiff informed the court of the above-mentioned supplemental initial disclosure, and stated that "because of the forty-three [*sic* — should read *thirty-nine*] newly disclosed witnesses . . . , [p]laintiff cannot fully present by affidavit or otherwise, her opposition to [d]efendants' motion and would be greatly prejudiced if she is not allowed additional time to respond and . . . for discovery.[34]  *See* Fed. R. Civ. P. 56(f) ("Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance . . . .").

While that motion was under submission, plaintiff filed another motion "request[ing] that she not have to identify her experts until after a decision ha[d] been made regarding [] her pending motion [to reopen discovery]."[35]  Although this move may at first appear puzzling — given the fact that plaintiff's deadline for identifying her expert witnesses had at that point been expired for nearly *eight months*[36] — it later

---

[33] Doc. no. 32 (Motion to Reopen Discovery).

[34] *Id*. at ¶ 5.

[35] Doc. no. 35 (Motion for Additional Time to Identify Experts), ¶ 3.

[36] Doc. no. 15, p. 2.

became clear what had occurred. Back in August, when the court issued its ruling on plaintiff's "Consented to Motion for Amendment to Court's Scheduling Order,"[37] discussed above, counsel for plaintiff examined that order and "[erroneously] understood that her request to extend expert testimony deadlines was also extended."[38] This, of course, was not the case.[39]

On December 16, 2005, the court issued an order denying plaintiff's motion to reopen discovery as well as her disoriented motion for additional time to identify experts.[40] It was at that point that plaintiff's attorneys finally "realized that expert witness disclosure had not been extended by the Court's August 2, 2005 Order."[41] Rather than explain this to the court and move to identify experts out of time, counsel for plaintiff simply went ahead and identified several experts on December 23, 2005, the time set for filing *other* witness and exhibit lists.[42] Soon thereafter, plaintiff also supported her opposition to summary judgment with affidavits from two of these experts.[43]

---

[37] Doc. no. 23.

[38] Doc. no. 53 (Plaintiff's Response to Motion to Strike and Motion *in Limine*), at ¶ 5.

[39] *See* Order Dated August 2, 2005.

[40] Doc. no. 40 (Order Denying Motion to Reopen Discovery and for Additional Time to Identify Experts), p. 2.

[41] Doc. no. 53, ¶ 6.

[42] Doc. no. 41 (Plaintiff's Witness and Exhibit List).

[43] *E.g.*, doc. no. 46 (Plaintiff's Evidentiary Submission), Ex. E (Moreland Affidavit); *id.* at Ex. F (Searle Affidavit).

**D.    The Current Motions**

Perceiving themselves "ambushed" by plaintiff's untimely designation of, and reliance upon, expert witnesses, defendants filed a "Motion to Strike and Motion *in Limine*" on January 20, 2006.[44]  Plaintiff responded in opposition, explaining (for the *very first time*) the crucial oversight regarding the expert disclosure deadline.[45]  Simultaneously with the opposition, plaintiff filed a "Motion to Reconsider Her Rule 56(f) Motion [to Reopen Discovery],"[46] and a "Motion to Identify Experts Out of Time."[47]  It is these three motions that currently occupy the court.

## PART TWO

### *Discussion*

As should be clear by this point, the court's decision on these three motions — while not necessarily dispositive of plaintiff's claims — has the potential to be one of the defining rulings in this action.  The court would prefer, obviously, that it not be such.  Cases, however, are built upon a solid factual foundation.  For that reason, the court expects every attorney to fulfill his or her professional duty to work diligently gathering evidence and witnesses in support of the client's position from

---

[44] Doc. no. 52.

[45] Doc. no. 53, ¶ 5.

[46] Doc. no. 54.

[47] Doc. no. 55.

the very start of a case.  Unfortunately, all too often a litigant is deprived of her day in court because of an attorney's failure in this regard.  This generally occurs when an attorney produces no evidence, and, proffers such insubstantial justification for their inaction that the court has little choice but to dismiss a case.  There are other situations, however, in which the evidentiary holes in a case, although perhaps partially attributable to neglect (excusable or otherwise), are equally occasioned by fortuity and other extenuating circumstances.

Determining the category into which a given set of facts falls can be a challenging assignment that entails consideration of various essentially equitable factors.  Recognizing this reality, the Eleventh Circuit has long held that "[t]he grant or denial of a continuance [to permit further discovery] is within the sound discretion of the trial court."  *Barfield v. Brierton*, 883 F.2d 923, 931 (11th Cir. 1989).

## A.    Plaintiff's Motion to Reconsider Denial of Her Rule 56(f) Motion

Any time a court contemplates a motion to reconsider, it must necessarily do so with reference to two sets of rules:  the rules governing motions to reconsider generally, and the rules applicable to the specific underlying order or judgment sought to be amended.

### 1.    Rule 60(b)

Another district court within this circuit has aptly explained the standing

principles relevant to motions to reconsider, starting with the observation that "the term 'motion to reconsider' or 'motion for reconsideration' does not exist in the Federal Rules of Civil Procedure." *Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.*, 972 F. Supp. 665, 674 (N.D. Ga. 1997).  The court went on:

> Federal Rule 60(b), under which most "motions to reconsider" [including the present one] are filed [,] is titled "Relief from Judgment or Order — Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc."  Rule 60(b) is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme or undue hardship . . . .
>
> [Such a motion] should be reserved for certain limited situations, namely the discovery of new evidence, an intervening development or change in the law, or the need to correct a clear error or prevent manifest injustice.

*Id*. (internal quotations and citations omitted) (some bracketing in original). Specifically, Rule 60(b) states that relief from an adverse order may be granted, *inter alia*, on the basis of "mistake, inadvertence, surprise, or excusable neglect . . . [,] or any other reason justifying relief."  Fed. R. Civ. P. 60(b)(1), (6).

Assuming that the court, in its discretion, concludes that plaintiff is due a continuance and additional discovery pursuant to Rule 56(f), the previous order denying such relief would "work an extreme or undue hardship." *Deerskin Trading Post*, 972 F. Supp. at 674.  Indeed, as it stands, plaintiff's opposition to summary judgment is extraordinarily weak.  For instance, even setting aside the issue of

qualified immunity, plaintiff has very little testimonial evidence to support her contention that the defendants acted with deliberate indifference to her serious medical needs.  *See*, *e.g.*, *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005). Without deciding the matter, it certainly *appears* at this stage that plaintiff lacks essential proof that law enforcement officials subjectively realized she was suffering from a life-threatening medical condition rather than a drug-induced stupor.  This is due in part to her own lack of memory as a result of her aneurysm, in part due to her attorneys' failure to engage in meaningful and timely discovery, and in part due to the accidental uncovering of the jail logs listing twenty-seven potential witnesses — including, critically, a *jail nurse who evaluated plaintiff* — after the close of discovery.

Moreover, assuming the court were willing to grant additional discovery, reconsideration of the order denying the Rule 56(f) motion could "prevent manifest injustice."  *Id*.  That is, granting additional discovery could enable plaintiff's attorneys to pursue myriad new leads that flow from the jail logs.  Although the court recognizes that many of the potential witnesses identifiable through those logs may turn out to have no information concerning the events in question, there is very substantial reason to believe that, at the very least, nurse Pat Powers will be able to offer some relevant testimony.  Whether her testimony will be helpful to plaintiff's

case or the defendants' is not something the court can predict; still, it is only fair that

the parties have an opportunity to question her.  Contingent on the court's opinion

concerning the Rule 56(f) motion, then, there is a valid "reason justifying relief."

Fed. R. Civ. P. 60(b)(6).[48]

## 2.    Rule 56(f)

Having concluded that the motion to reconsider is due to be granted, it remains

to examine the merits of the actual Rule 56(f) motion.  In full, Rule 56(f) provides

that:

> Should it appear from the affidavits of a party opposing the motion [for
> summary judgment] that the party cannot for reasons stated present by
> affidavit facts essential to justify the party's opposition, the court may
> refuse the application for judgment or may order a continuance to permit
> affidavits to be obtained or depositions to be taken or discovery to be
> had or may make such other order as is just.

---

[48] Alternatively, the court notes that "excusable neglect" could arguably justify
reconsideration.  *See* Fed. R. Civ. P. 60(b)(1).  One of the primary reasons for denial of the Rule
56(f) motion was the failure of plaintiff's counsel to "present[] *an affidavit* stating specific facts to
demonstrate how further discovery will 'permit [her] to rebut' defendants' summary judgment
arguments."  *See* doc. no. 40, p. 2 (quoting *Barfield v. Brierton*, 883 F.2d 923, 931 (11thCir. 1989))
(some alterations and emphasis in original).  This is not to say that an affidavit was not tendered.
To the contrary, the court inventoried plaintiff's affidavit, but observed that it was mostly conclusory
and did not list sufficiently specific goals for reopened discovery.

Although the failure to follow unambiguous rule generally does not rise to the level of
"excusable neglect," *see United States v. Torres*, 372 F.3d 1159, 1163-1164 (10th Cir. 2004), the
inquiry remains "at bottom an equitable one."  *Pioneer Investment Services Co. v. Brunswick
Associates*, 507 U.S. 380, 395 (1993).  Plaintiff's attorney has now submitted a much more complete
affidavit, and the court sees little point in punishing her client for the technical failures of the
previous version.  *Cf.* Wright Miller & Kane, 11 Fed. Prac. & Proc. Civ. § 2858 (2d ed. 2004)
("More generally, courts have held that the party should not be deprived of the opportunity to present
the merits of the claim because of a technical error or slight mistake by the party's attorney.").

Fed. R. Civ. P. 56(f).  The Eleventh Circuit has explained the operation of, and

purposes behind, the rule.

> The availability of a continuance is built into the rules to guard against
> the premature entry of summary judgment.  Subsection (f) allows a party
> who has no specific material contradicting his adversary's presentation
> to survive a summary judgment motion if he presents valid reasons
> justifying his failure of proof.

*Barfield*, 883 F.2d at 931 (internal quotations and citation omitted).

The proponent of the Rule 56(f) motion "must present an affidavit containing

specific facts explaining his failure to respond to the adverse party's motion for

summary judgment via counter affidavits establishing genuine issues of material fact

for trial."  *Id.  See also Cf. Pasternak v. Lear Petroleum Exploration*, *Inc.*, 790 F.2d

828, 833 (10th Cir. 1986) ("Rule 56(f) may not be invoked by the mere assertion that

discovery is incomplete or that specific facts necessary to oppose summary judgment

are unavailable; the opposing party must demonstrate how additional time will enable

him to rebut movant's allegations of no genuine issue of fact.").  Although, as

mentioned above, plaintiff's original affidavit was not sufficiently thorough in this

regard.

In support of her renewed motion, however, counsel for plaintiff has filed a

new affidavit, which is much more specific in terms of the anticipated fruits of

additional discovery.  At one point, plaintiff's attorney notes how the newly

discovered jail logs reflect that plaintiff "was seen by medical personnel at the jail and [that] her condition was such that she could still not be admitted to the general population 15-16 hours after she was arrested and accused of being under the influence of narcotics."[49] Counsel represents that "only through additional discovery can we ascertain what made the jail nurse conclude medically that Walker had to remain in Booking and not go into the general jail population."[50] Of particular interest to plaintiff is whether "jail personnel, as [] lay person[s], determine[d] that she needed to see the jail nurse[.]"[51] This question, of course, can only be answered through additional discovery directed at those jail employees who were on duty during plaintiff's confinement.  Only in the wake of the discovery of the jail logs were the identities of these employees ascertained.

It is true that, had plaintiff initiated discovery — specifically, by propounding her requests for production of documents — earlier, the jail logs might have turned up at a time sufficiently early to allow for proper questioning of those jail employees who could have relevant knowledge.  On the other hand, even counsel for defendants admits that the jail logs were discovered "fortuitously" during the investigation that

---

[49] Doc. no. 53, Ex. A (Affidavit of Linda L. Cole), ¶ 20.

[50] *Id*.

[51] *Id*.

followed plaintiff's service of her requests for production.[52]   Thus, it is not necessarily accurate to say that the logs would inevitably have been uncovered had plaintiff filed the requests earlier.   The court does not by this observation intend to discount the significance of plaintiff's failure to take full advantage of our liberal discovery provisions. *See Walters v. City of Ocean Springs*, 626 F.2d 1317, 1322 (5th Cir. 1980) ("The most common situation in which [Rule 56(f)] will not be applied to aid a nondiligent party arises when the nonmovant has complied with Rule 56(f) but has failed to make use of the various discovery mechanisms that are at his disposal.") (internal quotations and citation omitted).[53]   At the same time, though, it seems somewhat unfair to mete out blame where it is not clear that increased diligence would have been efficacious in avoiding the calamity.

"'[A] Rule 56(f) motion for discovery requires the court to balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party.'" *McGoy v. Ray*, 164 Fed. Appx. 876, 877 (11th Cir. 2006) (quoting *Harbert International, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998)).   As should be plain from the foregoing discussion, plaintiff's case depends on additional

---

[52] *E.g.*, doc. no. 34, p. 8.

[53] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

discovery.  Counsel for defendants has argued forcefully that it is the defense that will suffer "clear and unmistakable" prejudice by the summary denial of summary judgment and the reopening of discovery.[54]   The court cannot argue with this statement:  clearly, additional discovery will cost money, take time, and further slow the progress of an already sluggish case.  (With respect to the slow progression of this litigation, the court must accept some of the blame.  The past year has been one of the court's busiest in recent memory, with two high-profile criminal cases, and one all-consuming patent case that demanded large blocks of the court's attention and time).  By the same token, however, counsel for defendants cannot honestly contend that this prejudice will outweigh the hardship to be brought upon plaintiff if the court refuses to permit full consideration of the evidence supporting her claims.

The motion to summarily deny summary judgment will therefore be granted.  Each of defendants' motions for summary judgment will be denied, without prejudice to renewal following a brief period of additional discovery.  The exact details will be explained in an accompanying order.

## B.    The Expert Motions

The court is left with two motions relating to plaintiff's expert witnesses.  The

---

[54] Doc. no. 56 (Defendants' Response to Motion for Reconsideration and Motion to Identify Experts Out of Time), p. 21.

first is plaintiff's motion to identify experts out of time.[55]  The second is defendants' motion to strike the affidavits of those experts, which plaintiff submitted with her response to summary judgment even after the court had denied (for the second time) her motion to extend the deadline for designating experts.[56]  In the motion to strike, defendants also ask that the court "enter an order precluding Walker from offering, presenting, eliciting, or introducing, or making any reference to . . . any expert opinions of [plaintiff's experts] in support of or in opposition to any motion filed in this action . . . [,] at any hearing . . . [;] or during any trial[.]"[57]  These motions can be dealt with together.

At the outset, the court must state that it is not as sympathetic to plaintiff's plight with respect to expert designation and disclosure.  This court's original Scheduling Order provided that "the disclosures of expert witnesses — including a complete report under Fed. R. Civ. P. 26(a)(2)(B) from any specially retained or employed expert — are due:  From plaintiff(s) by April 15, 2005[,] [f]rom defendant(s) by May 27, 2005."[58]  As related above, the court has twice denied plaintiff's post-deadline requests for an extension of this cutoff.  Counsel for plaintiff

---

[55] Doc. no. 55.

[56] Doc. no. 52.

[57] *Id*. at pp. 1-2.

[58] Doc. no. 15, p. 2.

alleges — and the court takes her at her word — that she honestly misunderstood the court's first order denying additional time.  That order did not specifically state whether the aspect of the subject motion that requested additional time for expert designation was granted.[59]  Nevertheless, counsel had a duty upon receipt of that order to examine it carefully, and, if there was any cause for confusion, seek *immediate* clarification from the court.  Instead, the misunderstanding was not conveyed to the court until a full six months after the entry of that order.[60]

Decisions regarding the exclusion of expert witnesses as a penalty for noncompliance with disclosure rules are committed largely to, and guided by, the district court's discretion.  *See*, *e.g.*, *Prieto v. Malgor*, 361 F.3d 1313, 1317 (11th Cir. 2004).  Generally, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) [including expert witnesses] . . . , is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  Fed. R. Civ. P. 37(c)(1).  *See also Trost v. Trek Bicycle Corporation*, 162 F.3d 1004, 1008 (8th Cir. 1998) ("The rules thus permit a court to exclude untimely [expert] evidence unless the failure to disclose was either harmless or substantially justified.").

---

[59] *See* Order Dated August 2, 2005.

[60] *See* doc. no. 53, ¶¶ 4-6.

The information recited above does not by any means establish that plaintiff was "substantially justifi[ed]" in her failure to make timely disclosure. *Cf. Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 368 (M.D. Ala. 2001) (solving the "substantial justification" puzzle by asking "whether reasonable people could differ as to whether the party was required to comply with the disclosure [obligation at issue]") (internal quotations and citation omitted).  Her lawyers certainly were not acting properly when they included affidavits from undisclosed experts with plaintiff's summary judgment response, even after being explicitly denied leave to make proper disclosures.  The wrinkle in this case, though, is that the court has already decided to summarily deny defendants' motions for summary judgment and reopen discovery for a limited time.  But for that decision, it would not be reasonable to characterize plaintiff's actions as "harmless."  *Cf. Nguyen v. IBP*, *Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995) ("Failure to comply with the mandate of [Rule 26(a)(2)] is harmless when there is no prejudice to the party entitled to disclosure.").  After all, to the court's knowledge defendants have not designated any experts of their own, and they have not supported their motions for summary judgment with expert testimony.  It was plaintiff's failure to proffer her own experts that doubtless led to that decision, and it would work substantial prejudice to defendants to allow plaintiff to utilize her experts without permitting defendants to do the same.

-24-

The decision to reopen discovery ameliorates, in advance, any potential for harm that would ordinarily flow from retroactive approval of plaintiff's experts.  In the process of crafting new discovery and dispositive motion deadlines, the court can easily provide for a revised expert identification timetable.  Accordingly, defendants' motion to strike and motion *in limine* is due to be denied.  Plaintiff's motion to identify her experts out of time will be granted, after a fashion; *i.e.*, in an accompanying order, the court will set forth new deadlines for *both sides* to identify their experts.

## Conclusion

For the foregoing reasons, plaintiff's motion to reconsider will be granted, and her motion to summarily deny defendants' motions for summary judgment will be granted as well.  Defendants' motion to exclude all testimony from plaintiff's experts will be denied, and plaintiff's motion for additional time to designate experts will be granted.  Discovery will be temporarily reopened.  An appropriate order will be entered contemporaneously herewith.

DONE this 16th day of January, 2007.

_____
United States District Judge